# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CR-109-TLS |
| | ) | |
| TONY L. RICE | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 49], filed on April 14, 2011. In that Motion the Defendant claims ineffective assistance of counsel prior to and during plea negotiations. The Defendant claims that his counsel was ineffective for failing to advise him of the distinction between crack cocaine and cocaine base, and also for failing to explain the difference between actual and constructive possession of a firearm, and that these deficiencies caused his plea to be unknowing and involuntary. The Government filed a Response [ECF No. 51] and the Defendant filed a Pro Se Reply [ECF No. 58]. The Defendant then filed an additional brief, titled as a Motion for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing Section 2255 [ECF No. 62]. In this Motion, the Defendant expands on his previous arguments related to the gun charge and asserts a new claim. The Government responded to this Motion as well. For the reasons set forth below, the Court finds that the record conclusively shows that the Defendant is not entitled to relief.

## BACKGROUND

The Defendant was originally charged in a five count indictment. Counts 1 and 2 alleged two separate instances of distributing five grams or more of cocaine base, commonly known as

crack cocaine. These two counts were based on controlled buys, in which an informant acting under police instruction bought cocaine base from the Defendant. Count 3 alleged that the Defendant possessed five grams or more of cocaine base, and also ecstasy, both with intent to distribute. Count 4 alleged possession of a firearm in furtherance of a drug trafficking crime. Count 5 alleged possession of a firearm as a convicted felon.

The Defendant entered into a Plea Agreement with the Government [ECF No. 29]. In paragraph 8(a) of the Plea Agreement, the Defendant agreed to plead guilty to Counts 3 and 4 "because I am, in fact, guilty of these offenses." In paragraph 8(d), the Defendant and the Government agreed to a total sentence of 120 months imprisonment for Counts 3 and 4, with 60 months on Count 3 and a consecutive 60 months on Count 4. Also in paragraph 8(d), the Defendant acknowledged that he was getting a substantial sentencing benefit from the Government because the government agreed not to file the enhancement pursuant to 21 U.S.C. § 851. The Plea Agreement advised of the potential penalties, including that 120 months was the minimum total sentence possible on Counts 3 and 4. The Defendant agreed to waive his right to appeal and his right to file a collateral attack through any postconviction proceeding, including a proceeding under 28 U.S.C. § 2255.

On March 11, 2010, the Defendant participated in a change of plea hearing. At the plea hearing, the Defendant stated that he understands, reads, and writes English. (Plea Hr'g Tr., ECF No. 56 at 5.) The Defendant has a high school education equivalency and has completed a semester of college. (*Id.*) The Defendant stated he had no history of mental illness; that he was not under the influence of alcohol or drugs; that he had never been treated for a drug addiction; and that he had not been promised anything that was not found in the written Plea Agreement, a

copy of which he had before him at the time. (*Id.*) He was expressly reminded that he could consult counsel off the record at any point during the hearing. (*Id.* at 3–4.) The Defendant acknowledged more than once at the hearing that he understood he was agreeing to plead guilty to Counts 3 and 4. (*Id.* at 10, 11). He acknowledged that he was in fact guilty of Counts 3 and 4, and he recounted his conduct that satisfied all the essential elements of those two offenses. (*Id.* at 22–26). He stated that he understood that the Government would recommend a total sentence of 120 months imprisonment in exchange for his pleading guilty to Counts 3 and 4, which he understood was the statutory mandatory minimum sentence for those charges. (*Id.* at 11.) The Defendant stated that he understood that Counts 1, 2, and 5 would be dismissed, and that the dismissal of those counts resulted in a substantial sentencing benefit. The Court also discussed paragraph 8(f) of the Agreement, in which the Defendant agreed to waive all appeals and postconviction remedies as part of his guilty plea. The Court explained that waiver provisions are "generally upheld to be valid." (*Id.* at 19). The Court also explained that the waiver provision barred claims of ineffective assistance of counsel, except those that relate directly to the waiver provision or its negotiation. (*Id.*)

At sentencing, the Court accepted the plea agreement and sentenced the Defendant to a total of 120 months imprisonment pursuant to the binding term in the Plea Agreement, 60 months on Count 3 and a consecutive 60 months on Count 4. The remaining counts were dismissed pursuant to the Plea Agreement. The Defendant did not file a direct appeal.

The Defendant now collaterally attacks his conviction and sentence. In his habeas Motion, the Defendant asserts that his trial counsel provided ineffective assistance when he failed to explain the difference between cocaine base and crack cocaine, and when he failed to

inform the Defendant of the law relevant to 18 U.S.C. § 924(c). He submits that had his counsel correctly advised him concerning the law, he would have proceeded to trial, believing that he is actually innocent of the charges.

The Government argues that the Defendant knowingly and voluntarily agreed to the terms of the Plea Agreement, which contains a waiver of all appeals and all petitions for postconviction relief, including those based on ineffective assistance of counsel unless the alleged ineffective assistance had to do with negotiating or explaining the waiver provision itself. In addition to invoking the waiver, the Government's Response provides substantial argument related to the terms of the Plea Agreement, the Defendant's statements during the change of plea hearing, and the factual basis for the charges.

In his Reply the Defendant reiterates his argument that his counsel was deficient for failing to advise him of the difference between crack cocaine and cocaine base. He contends that the Government would not have been able to prove that the substance recovered from his dresser drawer was crack cocaine, as opposed to cocaine base. He maintains that had his counsel properly advised him about the distinction between actual and constructive possession of a firearm, the Defendant would have realized that he did not possess the firearm in violation of 18 U.S.C. § 924(c). In this Motion to Expand the Record, he asserts for the first time that it was counsel's failure to properly advise him about the "in furtherance of" element of the firearm offense that led him to plead guilty to an offense for which his conduct does not satisfy. The Defendant appears to contend that he did not possess the firearm in furtherance of his drug activity, but merely possessed it. The Defendant also alleges that the Plea Agreement he signed was different from the Plea Agreement accepted by this Court. Specifically, he claims that he

4

was promised that he would receive the benefit of retroactive application of the Fair Sentencing Act of 2010, and that this was part of the written document he signed and accepted on the day he pled guilty, but that the Plea Agreement now found in the record does not contain this promise.

## ANALYSIS

**A.     Plea Agreement Waiver**

The Government argues that the Court should deny the Defendant's Motion because he waived his right to collaterally attack his sentence as part of the Plea Agreement that he voluntarily entered with the Government. The Government points to the Defendant's statements throughout the plea colloquy as evidence that his plea, and its consequences, was knowing and voluntary.

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

Here, the Defendant's waivers of his right to appeal and his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under Title 28, United States

5

Code, Section 2255" (Plea Agreement ¶ 8.f), are express and unambiguous. They cite the same provision of the United States Code the Defendant is attempting to use to challenge his sentence. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45); *see also Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). The Defendant does not allege that the Court relied on impermissible factors, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for the crime he committed. Thus, the Defendant cannot pursue relief in the present § 2255 motion unless his waiver, or the plea agreement as a whole, was unintelligent or involuntary because of ineffective assistance of counsel or otherwise. *Hurlow v. United States*, 726 F.3d 958, 964–65 (7th Cir. 2013); *see also United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001) ("A waiver of appeal is valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary)." (citations omitted)).

The Defendant claims that he did not enter the plea agreement knowingly and voluntarily because it was based on his counsel's erroneous advice. A "claim[] that the plea agreement was involuntary or the result of ineffective assistance of counsel . . . concern[s] the validity of the plea agreement and," if it is successful, would "knock out the waiver of appeal along with the rest of the promises." *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000). Here, the Defendant clearly asserts that he would not have agreed to the terms of the Plea Agreement had

his counsel correctly advised him regarding drug types and the elements of the firearm offense. This type of claim is not barred by the collateral review waiver in his Plea Agreement, and the Court will thus proceed to the merits of these claims.

**B.      Ineffective Assistance of Counsel**

**1.      *Plea Agreement at Issue***

As a preliminary matter, the Court declines to credit the Defendant's allegation that the Plea Agreement filed in the record is not the same version of the Plea Agreement that he signed. The Defendant's argument is flatly contradicted by the record, including his statements during the change of plea hearing. The Defendant was provided a copy of the Agreement at the plea hearing. The Court specifically asked the Defendant whether he had this copy of the Plea Agreement before him, and the Defendant stated that he did. (Plea Hr'g Tr. 6.) This copy was identical to the Plea Agreement from which the Court read aloud at the plea hearing, and it was and is identical to the Plea Agreement that was filed in this case [ECF No. 29]. The Defendant testified that he had read the Plea Agreement filed on February 26 and that he understood all its terms, with there being nothing that he did not understand. (Plea Hr'g Tr. 7.) The Court discussed the individual terms of the Plea Agreement, referencing the provisions by their designated paragraph within the document, with the Defendant following along.

The only specific term the Defendant maintains has disappeared from the record was a promise to receive the benefits of the 2010 Fair Sentencing Act. Even if the Defendant's counsel told him that retroactive crack cocaine amendments would apply to his case, the Defendant was fully aware at the time of the change of plea hearing that the Plea Agreement being discussed

7

contained no such promise. Rather, this Plea Agreement included, within the waiver provision, the Defendant's understanding "that this waiver provision does not preclude me from filing a petition for relief pursuant to 18 U.S.C. § 3582(c)." (Plea Agr., ¶ 8(f).) Although this provision highlighted the fact that the Defendant could, despite his waivers, still file the applicable petition for a reduction of sentence if the Sentencing Commission subsequently lowered his crack cocaine sentencing range; it did not guarantee that the Defendant would necessarily qualify for a reduction or that a reduction would be granted. The only definitive understanding regarding his term of imprisonment was that he would receive a sentence of 120 months if the Court accepted the binding term, and that the Court had no authority to sentence him below the mandatory minimum of 120 months. Moreover, he advised the Court that no one made any promises or assurances to him that were not in the Plea Agreement in order to get him to accept the Agreement. (Plea Hr'g Tr. 7–8.) The Court credits this testimony to find that the Defendant was not pressured into his guilty plea through a false promise. *See United States v. Jones*, 381 F.3d 615, 619 (7th Cir. 2004) (finding that the court could rely on the defendant's statements during Rule 11 hearings to discount his self-serving assertions that he was pressured into a guilty plea through false promises).

### 2. *Legal Standard*

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688

8

(1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *Id.* at 694. "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

The performance prong requires the Defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. Based on the totality of the circumstances, the Court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.*

The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004). "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (noting that with respect to plea bargains, *Strickland* prejudice prong requires the defendant to show that counsel's constitutionally ineffective performance affected the outcome of the plea process); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To make that showing, the petitioner must do more than simply allege "that he would have insisted on going to trial"; he must also come forward with objective evidence that he would not have pled guilty. *Cieslowski*, 410 F.3d at 359. Objective evidence includes the nature

9

of the misinformation provided by the attorney to the defendant and the history of plea negotiations. *See Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007).

A § 2255 petitioner must present evidence regarding counsel's act or omission alleged to be ineffective, and in order for a hearing to be granted, "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith v. United States*, 313 F.3d 1001, 1008–09 (7th Cir. 2002). If not already part of the record, such evidence usually consists of a sworn affidavit attesting to specific facts supporting the petitioner's allegations, either from the petitioner or from his attorney. *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004); *Galbraith*, 313 F.3d at 1009. With nothing but bare allegations and no evidence supporting a claim, a district court may deny the petition without a hearing. *Galbraith*, 313 F.3d at 1009–10.

### 3. *Alleged Deficiencies in the Advice Provided by Counsel*

The Defendant alleges that there were two separate legal issues about which counsel failed properly to advise him. The first alleged deficiency is that counsel did not explain the difference between cocaine base and crack cocaine. In Count 3, the Government alleged that the Defendant knowingly and intentionally possessed with the intent to distribute a controlled substance, including five (5) grams or more but less than fifty (50) grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack,' a Schedule II controlled substance, and 3, 4-methylenedioxymethamphetamine (MDMA or Ecstasy), a schedule I Controlled Substance; All in violation of 21 U.S.C. § 841(a)(1). [ECF No. 13 at 3]. The Defendant contends that he agreed to plead guilty to that count only because his

attorney "failed to advise [him] of the distinctions between cocaine base and cocaine base known as crack." (Reply 14, ECF No. 58.) According to the Defendant, counsel advised him that "all cocaine base in the Seventh Circuit was treated as 'crack,' and that the type did not matter." (Motion, ECF No. 49 at 4.)

The Defendant believes that his counsel's advice led him to plead guilty to a charge that subjected him to a higher sentence. The Defendant's concerns about distinctions between cocaine base and "crack" cocaine are misplaced. He was charged with violating 21 U.S.C. § 841 for intentionally distributing a controlled substance, namely a detectable amount of cocaine base, commonly known as "crack." Federal drug laws identify cocaine base as a controlled substance. The substance commonly known as "crack" cocaine is a substance containing cocaine base and is covered by the provision that prohibits cocaine base. In other words, cocaine base is a broad term that includes "crack" cocaine, but also includes other cocaine base substances that are not considered "crack" cocaine. *DePierre v. United States*, 131 S. Ct. 2225, 2231 (2011). Therefore, if the Defendant's counsel did advise him that all forms of cocaine base, "crack" cocaine or otherwise, are treated the same, then his advice was correct—not deficient. While there are differences between powder cocaine and cocaine base, those differences are not at issue here and there are no differences in the statute between different types of cocaine base. *Id.*

Although the Defendant argues repeatedly that he would not have pled guilty if counsel had explained the drug differences, he does not *explain* how the advice provided regarding the type of drugs involved impacted his decision or had any bearing on his guilty plea. The Defendant himself admitted during the plea colloquy that he possessed "crack cocaine." (Plea Hr'g Tr. 24–25.) Moreover, the Defendant agreed to a sentence of 120 months during the plea

11

negotiations, which was the exact same sentence he ultimately received, not some "enhanced sentence" based on an ambiguity regarding the drugs he possessed.

The second deficiency alleged by the Defendant concerns the charge that he violated 18 U.S.C. § 924(c) when he possessed a firearm in furtherance of his drug trafficking. The Defendant alleges that counsel was deficient for failing to advise him as to the difference between actual and constructive possession of a firearm, and failing to understand the "in furtherance" element. The Defendant admitted under oath at the plea hearing that the handgun was found under his mattress, that he knew it was there, that he knew it was loaded, and that he kept it there for his protection and the protection of the drugs. (Plea Hr'g Tr., ECF No. 56 at 25.) A defendant's statements made during a plea colloquy are generally accorded a presumption of verity, *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000), and these admissions establish all of the essential elements of a violation of 18 U.S.C. 924(c). The Defendant's claim that his counsel's advise caused him to plead guilty when he is actually innocent is not supported by objective evidence and relies on a fundamental misunderstanding of the law.

The Defendant does not offer any legitimate dispute regarding his possession of the firearm, and appears to have abandoned the actual versus constructive possession aspect of his claim. Rather, he now believes that he could have prevailed at trial as to Count 4 by disputing the "in furtherance of" element of the gun offense. In making this assertion, the Defendant is faced with his admission that he used the weapon "to protect myself and the drugs." (Plea Hr'g Tr. 24–25.) "One legal theory that has been advanced and unanimously accepted, is that a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection." *United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008) (quoting *United States*

*v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005)); *see also United States v. Mitten*, 592 F.3d 767, 777 (7th Cir. 2010); *United States v. Castillo*, 406 F.3d 806, 814–18 (7th Cir. 2005)). Therefore, in a final effort to undermine his plea, the Defendant asserts in an Affidavit accompanying his Motion to Expand the Record that "the statements made at Movant's Rule 11 plea colloquy admitting guilt was the result of Movant having been advised by counsel to do so." (Aff. ¶ 4, ECF No. 63-1 at 8.) This statement provides no useful information. The Defendant does not identify which statements he is referring to, or even indicate that any statements were in fact false. Just because statements were made as the "result" of advice does not mean that they were untrue. A Defendant must describe his illegal actions before a court will accept a guilty plea, and the Defendant does not indicate that his counsel told him to make any untrue statements of guilt. He does not even indicate what the true, alternative, reason for possessing the firearm in proximity to his drugs and drug proceeds would have been.[1] Moreover, "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (citations omitted). The Defendant has not presented any compelling reason why he admitted to having the gun for protection if it was not the truth. The Court placed the Defendant under oath, explaining the importance of being under oath and making true statements, and the importance of the Defendant's understanding the consequences of his guilty plea. (Plea Hr'g Tr. 4.) Being advised by counsel to make (unidentified) statements admitting guilt is not a compelling reason to commit perjury.

---

[1] As an aside, if counsel told the Defendant that simple possession was sufficient for a § 924(c) conviction, as the Defendant alleges, then it defies logic that his counsel would have directed him to provide a specific reason for possession of the gun, much less a reason establishing that it furthered his drug activity.

13

Additionally, as the Government pointed out during the plea hearing, the Government was prepared to admit testimony in support of the firearm charge that guns are typically carried by individuals who distribute drugs to protect their drugs and the proceeds of their drug sales from being robbed. Given the location of the firearm and the Defendant's activities, his admission concerning the purpose for the firearm was not even necessary to establishing the elements of the offense.

An additional flaw in the Defendant's argument is that he has no objective evidence in support of the prejudice prong. *See Cieslowski*, 410 F.3d at 359 (stating that to show prejudice, the defendant must do more than simply allege "that he would have insisted on going to trial"; he must also come forward with objective evidence that he would not have pled guilty). In exchange for his admission of guilt, the Defendant obtained a substantial sentencing benefit: the Government agreed to recommend the statutory minimum sentence for Counts 3 and 4, and also agreed to dismiss two additional felony drug charges and a second firearm charge. The dismissed firearm charge would not have required the Government to prove that the Defendant did anything with the firearm beyond merely possessing it as a convicted felon. Additionally, the Government agreed not to file a sentencing enhancement that would have elevated the Defendant's statutory mandatory minimum to ten years. While the Defendant may now regret admitting guilt as to Count 4, the fact that he believes he might have prevailed at trial with respect to Count 4 does not render his counsel's advice incompetent or establish prejudice. In advising the Defendant on whether to plead guilty to Count 4, counsel had to consider not only the probability of prevailing on Count 4, but also the probability of prevailing on Counts 1, 2, and 5, and the likely sentence if the Defendant were convicted on those counts. Had the

Defendant been acquitted on Count 4 but convicted of the charges that were dropped pursuant to the Plea Agreement, he could have faced a much more severe sentence than the one he received under the Plea Agreement, which included a recommendation that the Defendant receive the statutory minimum sentence for the two Counts to which he pleaded guilty.

Considering the severity of the sentence the Defendant could have faced on Counts 1, 2, and 5 even if he had prevailed as to Count 4, counsel's decision to advise the Defendant to plead guilty to Count 4 in exchange for dismissal of Counts 1, 2, and 5 was a reasonable strategic choice entitled to deference. *See Strickland*, 466 U.S. 668 (1984) (stating that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). The record supports the conclusion that counsel offered the Defendant his candid opinion on the likelihood of success at trial based on the available strategies and defenses. There is nothing in the record to indicate that this assessment was unreasonable or unprofessional. Moreover, the Defendant provides only a conclusory statement that with additional explanation of the elements of the firearm offense, he would have decided not to plead guilty.

**C.     Additional Claim**

In his Motion to Expand the Record, the Defendant complains that his Sixth Amendment right to effective assistance of counsel was violated when his trial attorney did not file a pretrial motion to suppress. This claim, that trial counsel rendered ineffective assistance with respect to this pretrial matter, has nothing to do with the negotiation of the plea agreement, and it is thus barred by the waiver contained in his Plea Agreement. *See, e.g., Bridgeman*, 229 F.3d at 593

(stating that ineffective assistance of counsel claims that relate to anything other than plea negotiation, for example, those related to counsel's performance at sentencing, are barred by an enforceable waiver); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver).

**D.     Evidentiary Hearing**

The Defendant has requested a hearing to be held in this matter. An evidentiary hearing need not be held for every § 2255 motion. "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted). Here, the Court has concluded that the Defendant's arguments are either waived or are unsuccessful on their merits. Because the Court finds that the Defendant has not raised a cognizable claim in his § 2255 Motion, he is not entitled to a hearing. *See, e.g. Hutchins*, 618 F.3d at 700 (finding that despite trial counsel's election not to refute the defendant's allegations that he provided ineffective assistance, an evidentiary hearing was not necessary because the record before the district court conclusively showed that the defendant was not prejudiced under *Strickland*).

E. **Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make "a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted).

Given the Defendant's knowing and voluntary waiver of his right to collaterally attack his sentence, the Defendant cannot make the necessary showing as no reasonable jurist would find it debatable whether this Court was correct in its ruling pertaining to the waiver. In addition, no reasonable jurist could conclude that the Court's assessment of the Sixth Amendment claim was debatable or wrong regarding the negotiation of a plea agreement containing a binding term of imprisonment and dismissal of charges in exchange for the admission of guilt on two counts that were supported by the evidence. Consequently, the Court will deny a certificate of appealability as to the Defendant's Motion.

**CONCLUSION**

The Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 49] is DENIED, and the Court declines to issue a Certificate of Appealability. The Court construed the Defendant's Motion to Expand the Record [ECF No. 62] as additional briefing and considered it as part of his collateral attack, and the Motion is therefore DENIED

17

AS MOOT.

SO ORDERED on August 11, 2014.

                                           s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT